Okay, whatever counsel is ready, we'll hear from Mr. Ali. Good morning, Your Honors, and may it please the Court. You may want to raise the head just a bit. Thanks. This appeal is capable of narrow resolution. Let me just say, Amir Ali for the mother, father, and estate of Marquez Smart. May it please the Court. This appeal is capable of narrow resolution based on two rules that are clearly established in this Court's case law and obvious. First, it violates clearly established law to use deadly force against someone who could not reasonably be perceived as a threat to anyone. The Court has applied this rule in the particularized circumstance of the use of a firearm against a person who the officer claims had a gun but who was in fact visibly unarmed, doing nothing threatening, shot from behind, without even a warning. The second rule is that it violates clearly established law to shoot someone who a reasonable officer would know is subdued, here lying face down, visibly unarmed, on the street. As the District Court explained in this case, a jury could find that a reasonable officer would have known all of those facts in this case. It could find that it was objectively unreasonable to even connect Mr. Smart with the gunshot that had been heard. It could find that it was unreasonable to perceive Mr. Smart to have been holding a gunshot. Here we have seven eyewitnesses. In most deadly force cases, you will have zero. Here we have seven eyewitnesses, three other police officers who were able in these circumstances to perceive Mr. Smart not to be holding a gun, and four lay witnesses who lack even basic training who said, quote, one of them, Latyra James, said, quote, I was standing right next to him. Sorry, that's not the quote. The quote is, I had no trouble seeing his hands and there was nothing in his hands. That's Latyra James at the time the gunshots go off. Then you have Deshawn Wheaton, who says he's standing six feet away from Mr. Smart's body, and this is when he testifies, defendant Chaffee, quote, walked up to Mr. Smart's feet and fired three more shots into Mr. Smart's body. Who are you talking about there? This is Deshawn Wheaton's testimony. All right, Mr. Wheaton says that's Mr. Officer Froese. So I think that the district court handled this correctly. Let me be very precise about what he said because that's not quite what he said. The district court handled this correctly. You're correct that Deshawn Wheaton seems to have mixed up the two officers. Now, of course, that's an argument that could be presented to the jury to impeach Mr. Wheaton's testimony, which is how the district court treated it, and as you just noted, the testimony wasn't, I know these two officers and it was this officer. He had no idea who these officers were before this event or at least had no reason to know the two of them and distinguish between the two of them. You have a six-foot officer, and I think it's a six-foot-five officer, and he says he thinks it was the taller of them who shot, which would have been defendant Froese. So sure, if defendants want to present that argument to a jury, they could. I don't think it would be particularly persuasive given that Deshawn Wheaton says, again, he was six feet from the body. And remember the contemporaneous statement that Deshawn Wheaton says in the immediate aftermath. He walks up to the officer and says, man, that's effed up. He was laying on the ground. And what do the officers say to him? They say, get the eff out of here. Another witness, this is Mr. Wilson, testifies that an officer actually put a gun in his face and told him to get out of there. Now, I don't just say that to be kind of inflammatory towards the officers. I want to picture the circumstance here. You have someone who has just been shot and killed. And the witnesses who saw the events, standing just feet away, are told to get out of there. It's almost unfathomable that that's how you'd handle a situation like that and not take a statement of them. The district court agreed that a reasonable officer could have perceived that the shots were coming from a different direction, that Mr. Smart wasn't carrying a gun. Ultimately, the court said there's no clearly established law on a situation like this, which is an active shooter in a crowd where the police officers are trying to stop an immediate threat to bystanders. What is your position in terms of trying to find clearly established law which we're not supposed to do at too high a level of generality? How specific do we need to get here on clearly established law? So let me address it with respect to the particularized facts of this case, which is what the court has said. Well, you've stated the facts, and I know we take them from the plaintiff's view, but you've stated them all. You've omitted all of the facts that are contrary to your position, which I'm assuming you did on purpose. Well, actually, I want to be very clear. We're not doing that. So the qualified immunity inquiry, I think, in this report's case law and this court's case law, takes place effectively the clearly established prong in two steps because it's an objective inquiry. So the first question is what would a reasonable officer have perceived? And there I take the facts to be what Your Honor just stated that the district court found. A reasonable officer might have perceived that he wasn't even connected to the gunshot. So I'm not hiding the fact that there was a gunshot heard here. Yes, there was a gunshot heard that wasn't on Mosley Street. There was no gunshot from anyone on Mosley Street, which is where the officer and these witnesses were. And so, yes, there was a gunshot, but even taking into account that there was a gunshot, several witnesses were able to perceive that he was unarmed, and a reasonable officer could have perceived he was unarmed. So if we take those facts. But we also know a gun was found 10 feet from him next to his eyeglasses, right? So, I mean, that's what I'm saying, is you're stating all the evidence one way, which I understand we're on summary judgment. But in terms of looking at how – and that's what the district court did. The district court said, I'm going to take all of the facts in the light most favorable to the plaintiff here because we're on summary judgment. And if I take every fact to be the best it could possibly be for the plaintiff, then we could conclude, a jury could conclude, that a reasonable officer would have perceived in favor of the plaintiff's position. So I want to answer the part about the gun because we're also not shying away from that, actually, on our version of the fact. But I feel like I haven't satisfied you on the first question you asked me, which is the clearly established law here. Yeah, and that's what I really care about here. And so I really want to get to that. So the first question you ask, because it's an objective inquiry, is – let me start here. Every one of these cases, Garner, this court decision in Carr, in every one of those there's some sort of triggering event, right, that precedes the unreasonable action and the action that violates clearly established law. Here it was a gunshot that was heard, which any police officer would be trained to deal with. Now, you wouldn't be trained to deal with it in this way because a reasonable officer, if we're talking about the particularized facts here, no connection to the gunshot, shot unarmed, no threatening movement, those are all things a reasonable officer could have perceived. They're all also true in Carr and in Walker. You have them being shot from behind, also true in Carr. So if you take the constellation of facts that a reasonable officer would have known here, you're on all fours with those cases, Garner, Carr, and Walker. And that's the relevant inquiry. So you don't start by saying gunshot changes everything because – and by the way, I'd point the court to the Eighth Circuit's decision in Wheelett, for instance, which happened just over the border in Kansas City, Missouri. And in that case, the police officer said, we perceived him to have a gun and that's why we shot. Now, in Wheelett, which we cite in a reply brief in response to an argument from the appellees here, the court said, as I think this court should say here, that's a factual question for the jury, whether you could have reasonably perceived this individual to still be holding a gun. And we think the rule should be the same here in Wichita, Kansas, as it was in Kansas City, Missouri. And I'll also point the court to the Fifth Circuit's decision in Baker v. Putnell, which also involved a gunshot. In none of these cases are the courts saying, oh, we have a gunshot. We need a case that specifically involves a gunshot. Instead, what they say is, look, you don't need a scavenger hunt for a precise case because we're never going to find that. What we need to do is establish what a reasonable officer might have perceived in these circumstances. And again, I could walk through them again here, but the key ones are that Mr. Smart wouldn't – he was shot from behind when he was unarmed. So what you're left with is hearing a gunshot and indiscriminately shooting into the street at a crowd of people. I mean, Defendant Froese here fires five bullets and it appears hit five different people. And we haven't even gotten really to Defendant Chaffee. And before I sit down and try to reserve the rest of my time for rebuttal, let me just address that really quickly. I hate to do this to you, but before you get to Mr. Chaffee, you just mentioned your reliance on Walker and Carr. In your district court brief, I don't think there was any citation. I don't think that in your table of authorities the Carr case even appears. In Walker, in district court, in your response to the summary judgment motion, you never argued that Walker would have alerted a reasonable officer to the existence of a constitutional violation. And so not surprisingly, the magistrate judge says he can't find a case. Well, you didn't alert the magistrate judge to Walker and Carr as you do to us. How does that affect whether we should reverse on your reliance on cases that you did not alert the magistrate judge? So I guess I have three responses to that, Your Honor. The first is defendants haven't asserted any sort of waiver here. And, of course, waiver can be waived. The second is that the district court or the magistrate judge's opinion here cited all of the cases, Carr, Walker, and King, which is the other from this court, the real one. So the district court was aware of those cases. And the third is, of course, you don't waive claims. You waive – sorry, you don't waive arguments. You waive claims here. And I don't think there's any, you know, suggestion here that there's a claim that has been waived by the plaintiffs. And if I could just really – Well, let me – on Carr. I mean, Carr, we're talking about somebody armed with a piece of concrete. Here – I mean, nowhere did you argue that these police officers did not actually believe that Mr. Smart was the shooter and that they just tracked him down and shot him on purpose. I mean, they believed he was the one who fired the shots and chased him down. You don't disagree with that, do you? We don't. It might be an unreasonable belief, but they, in fact, believed it. So we think that the relevant inquiry is whether it's a reasonable belief. That's clear. We don't think you can credit these officers with a sincere belief. In fact, we believe there's a serious concern for false testimony and perjury here. And I think actually the gun that fell to the ground – I mean, the officers committed themselves to that gun that they purportedly found on the ground. Now, inconvenient for the officers, it doesn't match their story. It couldn't – by their own experts' testimony, likely didn't fire the same number of shots. Well, but there's also a witness who saw a gun in Mr. Smart's hand, and he was a witness who generally testified favorably to Mr. Smart. And I'm going blank on his name right now. So I think you're referring to – I'm sorry, I'm losing the name here. So I forget this – I've lost it, and this is lame. But let me just point out the picture here, because that witness doesn't say he ever saw Mr. Smart extend his gun and shoot a gun. And I just – this goes to the credibility of the officer. So the officer's testimony, just to show how implausible it is, is that they witnessed Marquez Smart hold a gun standing 10 feet away from a crowd of 50 people. So it's about the distance – actually less than the distance from me to my colleague here. Holding a gun, indexing it to a crowd of 50 people in front of hundreds of people, okay, and fired between three and five bullets. They couldn't produce a single civilian witness out of the hundreds who saw that. They couldn't produce a single person who had been shot, again, from this distance into a crowd of 50 people, five bullets. That's how implausible this story is. So I don't think the officers can be credited with a sincere belief of anything in this case. I think I'll reserve the rest of my time for rebuttal, if the Court would allow. Thank you, Counsel. We'll hear from Mr. Green. Good morning, Your Honors. May it please the Court. Samuel Green on behalf of the defendants, apologies. Just real quick before I get started, I want to make a point about the standard of review here. This is an appeal from a grant of summary judgment, and the correct standard of review is a de novo review. Several times throughout the briefs, plaintiffs refer to or make the statement that this Court must accept as true the factual findings of the District Court. That would be, perhaps, the correct standard on an appeal from a denial of qualified immunity, where the Court accepts what facts and inferences the District Court would have taken, and then just looks at purely legal issues on those interlocutory appeals. That's not the case we have here. With that being said, the District Court correctly granted summary judgment on behalf of Officers Frey's and Officer Chafee on qualified immunity because no case squarely governs the situation that these officers faced. Well, let me challenge that a little bit. With respect to the – I find Mr. Wheaton's testimony to probably be the most difficult for you, because he testifies that after Mr. Smart fell, that there was time enough for him to perceive that Mr. Smart's arms were out to the side, you could clearly see that he was unarmed, and he also testifies that Mr. Smart had time to turn around and look at the officer behind him, which, although Mr. Wheaton said was frozy, I think it's Chafee. And then three more shots into Mr. Smart. Isn't the question whether a reasonable officer would have had time to perceive that Mr. Smart was no longer a threat? And isn't Mr. Wheaton's testimony enough to get to the jury on that? I think you are isolating – Your Honor is isolating a fact out of the totality of the circumstances. Okay? This is – I mean, we're looking at this situation based on what reasonable officers on the scene at the time would have seen, with the information that the officers knew. Okay? The officers were on scene for crowd control. They heard shots rang out. It's undisputed that shots rang out. The crowd starts scattering. It becomes chaotic. The – both officers testified that they saw someone with a gun point into the crowd, that that person was wearing a yellow shirt. Weren't lots of people wearing yellow shirts? Isn't that the Wichita State color? That is not a part of the record, Your Honor, that lots of people were wearing yellow shirts. I read it somewhere. I would not normally know anything about what color Wichita. I don't know that any witness stated that there was lots of people in yellow shirts. But either way, that's what the officers perceived. They both believed that they had followed this individual as he turned and ran. Now, Wheaton testified that he heard the initial shots. He starts scanning around, looking for what's going on. And then when he sees the officer and Smart, Smart is already falling to the ground. And then the subsequent set of shots that he heard, which he said was after a period of time where the officer walked up behind him, et cetera. But even Mr. Wheaton put the entire incident at just a few seconds. So even according to his testimony, the entire incident was just a matter of seconds, and that's corroborated by every witness that was on scene. This lasted from the initial shots in the crowd until the officer's last shots was five, maybe ten seconds. No witness even said ten. It was five to seven seconds was every consistent testimony. So if it was 15 seconds, would that affect the outcome? Again, it would be based on the totality of the circumstances and what the situation is. But it could, maybe. It might, depending on other factors, yes. It's possible. Could it affect the outcome if it were ten? I think we're talking about such short times. I mean, we're talking about from the beginning of the initial shots, not officer shots, but from the initial shots to the end. And I think ten seconds is just as reasonable as five. I mean, as far as we're looking at rapid sequence of events where shots are heard, officers who are already scanning the crowd looking for disturbances turn and see somebody with a gun pointed into the crowd. He turns and starts running. Officers give chase, fire shots, and by the time Officer Frey shoots and Officer Chafee shoots, the entire thing, until they perceive that Mr. Smart has been disabled and dropped the gun, is just seconds. And whether that's five seconds or ten seconds, I think both of those fall within the realm of reasonable, and I don't think that there's any case law that would say differently. Now, there is case law that says it's unreasonable to use force once the officer's perceived that an individual has been subdued, but that's not the case here. Officer Chafee testified that he shot until he perceived Mr. Smart to go down and drop the gun. That testimony is corroborated by Officer Frey's, by Sergeant Gulliver, by Andres Wilson, who testified that he saw Officer Chafee fire three shots, that those shots were in quick succession with no pause, and that those shots started while Mr. Smart was running. Now, he thought the last shot hit Smart after he was down, but there was no gap between those shots, so that would be entirely consistent with Officer Chafee. I didn't understand that, that there was no gap between the shots, but that he shot him after he was down. I don't know what that says. He testified that he saw Officer Chafee shoot three shots in quick succession with no pause in between the shots. So shot, shot, shot. The shots started while Mr. Smart was still running, and by the third shot, he thought Mr. Smart had fallen to the ground. So in a sequence of events, three shots as Mr. Smart is running and falling to the ground. So his testimony is he pulled the trigger after he was down? No, that the shot hit him after he was down. Whether he pulled the trigger then or not is immaterial. And we can say as a matter of law that viewing the evidence in the light most favorable to the plaintiff, the fact that in the moment that these fellows are within close proximity to one another, the fact that the bullet hit Mr. Smart after he was down, no reasonable fact finder could have inferred that Officer Chafee pulled the trigger after he was down. That's not what I'm saying, Your Honor. I'm saying that there is no case law that as a matter of law requires Officer Chafee to pull the trigger once, stop, re-evaluate the situation. Pull the trigger again, stop, re-evaluate the situation. It's reasonable for an officer to shoot until he perceives the threat to be stopped, and I think the testimony is entirely consistent in that regard, that that is what happened. Can I ask you one question about really what the magistrate judge did? It seems to me that both sides, well, I think this is a factual statement, both sides are saying that the magistrate judge erred. You're saying he erred on prong one, and the plaintiff is saying he erred on prong two. And on prong one, the magistrate judge, viewing the evidence in the light most favorable to the plaintiff, concluded that a reasonable fact finder could have concluded that Officer Chafee and Officer Froese used excessive force, using deadly force when it was not appropriate under Garner, right? And so, and then now if it was a reasonable mistake on the part of Officer Froese and Officer Chafee, the magistrate judge, that would have been an obvious error on his part, right? Because it simply wouldn't be a violation of Garner if somebody makes a reasonable mistake, right? Correct. And then when he gets to off prong two of qualified impunity, the magistrate judge seems to, I don't mean to be pejorative, but seems to forget what he said on prong one and said that now on prong two, the two officers made a reasonable mistake. And so it wasn't a violation of clearly established law. That's exactly the opposite of what the magistrate judge said on prong one. So I certainly understand why both sides think that the magistrate judge erred. What I don't understand is where the logical flaw is in what the magistrate judge said on prong one. Because there are two diametrically opposed accounts, unquestionably. But it seems to be that viewing the evidence of the most favorable plaintiff, what the magistrate judge did on prong one is right. What's wrong with that analysis? First, I understand Your Honor's reading of the opinion. My reading of the magistrate's opinion is that the magistrate used the reasonable mistake element or analysis only in the second prong and rejected that framework in the first prong. So whether that's a correct application or not. But on the first prong, I think there are a couple issues. Regarding the court's finding that it was not reasonable for the officers to believe, reasonably believe that Mr. Smart had a gun, there are two or three issues I'd like to point out. One, only the officer saw Mr. Smart at the moment or right after these shots were fired. Officer Fraze saw the shot, the second shot from Mr. Smart. Officer Chafee had turned right after and saw Mr. Smart holding the gun. None of the witnesses that were questioned saw Smart at that moment. Well, there was a woman standing right next to him who said she could see his hands right at the time that the shots were being fired and that he was unarmed. I mean, I think it's fair to say that the evidence is in conflict on whether he had a gun. Would you say that's fair? I think potentially. I don't think Ms. James' testimony is that clear. I think it's, she clarified, I mean, she was being asked several times on several issues, come on, clarify what you're saying, clarify what you're saying. And she had walked away from Mr. Smart and he was somewhere behind her. They had both walked off and were talking to different groups of people. So in that, the part where she says she was by him when the shots were fired and she could see his hands, perhaps, but I think even her testimony doesn't state that. But we're on summary judgment here. And so you're saying she's not very believable for a lot of reasons. But we don't do that at this, I mean, that's not our position. We have to assume the facts in the light most favorable to the plaintiff, right? Correct, yes. Go ahead, I'm sorry. Well, so in terms of the first prong, don't we have to agree with the magistrate that if you take those facts in the light most favorable to the plaintiff that you can, a reasonable jury could find that the officer's assumptions were unreasonable? I don't think that's the next logical step, no, Your Honor. Even if Ms. James' testimony is credited, the officer still saw someone with a gun pointed into the crowd in a yellow shirt. And they believed that they tracked that individual. And this is where the reasonable mistake would come in. They believed that that person was Mr. Smart. They believed that the shots came from an area just east of the parking garage, just on the outside. But other witnesses, there are two witnesses that say that they thought that the sound of the initial gunshots came from the parking garage, right? Yes. And that's a different visual direction from where Officer Froese was from where the two officers say that Mr. Smart was on Mosley, right? No, no. But the parking garage is obviously on the west side of Mosley, right? Correct. And Mr. Smart was on the sidewalk just outside of the parking garage. So Officers Froese and Chafee were just kind of to the northeast of where Mr. Smart was. So they both perceived the shots to come from outside the parking garage. Sergeant Gulliver was over farther to the east, and he thought they might have came from inside the parking garage. But we're talking about the parking garage being 5 or 10 feet away, so we're talking about the same vicinity. Okay. Can I ask you a question? Because I was a little confused about this. So I'm going to use my binder as a prop. So I thought that you were saying, that everybody was saying that Officer Froese parked, everybody says that he parked near the north entrance to the parking garage. Well, that's north. But it seems to be that you are saying that he's actually parked right here. And then the parking garage is here, and the sidewalk is here. So is that right? So the sidewalk would be running parallel with where your finger is. Yeah, so Officer Froese says that he hears the gunshot that way, and the other two witnesses say, no, they heard the gunshots here. And this is my binder is the parking garage. Did I get it wrong? Yes, a little bit. Okay. So Officer Froese was not in his car. He was out in the street. No, I get that. And he heard shots coming from what he thought was a sidewalk. My point is that there's no witness that puts the shots somewhere different. They're all in the same general vicinity of either just outside the garage or perhaps inside, but it's all in the same general vicinity. I mean, we're talking he was 10 feet from the garage or something to that effect. He's on the sidewalk right beside the parking garage. So that officers in different areas around might have thought it came from inside or outside. I don't think that's a material dispute that anyone has controverted or even disputed. Latira James, she didn't identify where they came from. She just, they weren't by me. That doesn't controvert where everyone thought they came from. I'm out of time. You know, I took up an extra minute of yours, so you can stop now, but if you want to take an extra minute, you're welcome to. I will point out on the inferences, the magistrate found that it was not reasonable for the officers to believe where the shots came from. I think that's uncontroverted. It came from that general area, and the only evidence that he relied on is Latira James, who didn't identify where they came from. Just they weren't from by me. Well, to be fair, the magistrate judge concluded that a reasonable jury could find that it was unreasonable. The magistrate judge didn't presume to perform the jury's function. And that's an inference that I'm suggesting is not supported by the record. And the same with the Officer Chaffee shooting Mr. Smart on the ground. Andres Wilson is what he relied on for that. Andres Wilson's testimony doesn't support that. Officer Chaffee walked up and fired three more shots. And the same with those shots being 45 seconds after Mr. Smart was down. Mr. Wilson doesn't testify to that. He said there was 45 seconds between Frey's and Chaffee's last shot, not from the time Smart went down. Andres Wilson's own testimony was the shot started as Smart was up and ended when he went down. Thank you, Your Honors. Thank you. Thank you, Your Honors. Just three very quick points, two of which are just quick factual citations for you. The first on the record question about whether there is anything in the record about people wearing yellow, just point the court to our appendix at 169. That's where Defendant Froese confirms that Wichita State wore the colors of yellow. And, in fact, I'd point out that two of the people shot here were wearing yellow, not just Marcus Smart, but Daryl Lucas was wearing yellow, and that's in his testimony, which I believe is in the supplemental appendix. But it was at least attached to some of the summary judgment motions. The second point was just in rebuttal to a point that was made at the very end of my friend's argument here about how there was no testimony about where the bullet came from or that the gunshot might have come from another area. I'd point the court to Latire James' testimony, and I'll explain it really quickly. You have Mosley Street running north, and you have Rock Island Avenue running north, and the alley we're talking about runs east-west between those two streets. Everybody agrees that the officers, Mr. Smart, and all of the witnesses we're talking about were on the Mosley side of the alley. And Latire James' testimony was not just, quote, that it wasn't near, the initial gunshot wasn't near, but, quote, was, quote, down the opposite way of the alley, which would mean Rock Island Avenue. And I point that out not just because it supports the district court's conclusion that a reasonable jury could find that the bullets were not fired in the vicinity even, but what that means is that necessarily the testimony we have in the record about an active shooter on Mosley Street is false testimony. It's perjured testimony. And I'm not aware of any court in this country saying that we are, you know, that it's willing to overlook perjured testimony by officers saying they witnessed this person hold a gun. Not just hold a gun. They could clearly see him run away with the gun. Not just run away with the gun. They could clearly see him drop the gun and see it skip down the alley. All of that is false testimony if a jury is to credit Latire James' testimony here. And the final piece, just on the timing, because there was some discussion when I sat down about the number of seconds that had passed, and I just want to point out how profoundly troubling this record is if you do credit, if a jury were to credit Deshaun Wheaton's testimony here, because by Defendant Chaffee's own testimony, he was standing about ten feet behind Marcus Mart when he went down. About five seconds passed, as the district court noted. I just want the court to note that's about one step per second. Step, step, step, step, step, firing the final three bullets. That's the record we have before the court in this case, and we respectfully request that the court reverse the district court's judgment. Thank you. Thank you, counsel. This matter will be submitted. Both sides did an excellent job in your respective briefs and in your advocacy today. We appreciate your hard work for both sides. This matter is submitted, and we'll go to the next case.